## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| TAMIKA CRYMES, | ) | CASE NO. 1:22-CV-00539-CEH |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | CARMEN E. HENDERSON |
| | ) | |
| COMMISSIONER OF THE SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | **MEMORANDUM ORDER & OPINION** |
| | ) | |
| Defendant, | ) | |

### I.       Introduction

Plaintiff, Tamika Crymes ("Claimant"), seeks judicial review of the final decision of the Commissioner of Social Security denying her applications for Supplemental Security Income ("SSI"), Disability Insurance Benefits ("DIB"), and Period of Disability ("POD"). This matter is before the Court by consent of the parties under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court AFFIRMS the Commissioner of Social Security's nondisability finding.

### II.      Procedural History

Claimant filed applications for SSI, DIB, and POD on December 5, 2016, alleging a disability onset date of September 22, 2015. (ECF No. 8, PageID #: 44).[1] The applications were denied initially and upon reconsideration, and on August 21, 2017, Claimant requested a hearing before an administrative law judge ("ALJ"). (ECF No. 8, PageID #: 44). On August 29, 2018, an

---

[1] Claimant also filed an application for DIB and POD on April 11, 2012, alleging a disability onset date of January 29, 2011. (ECF No. 8, PageID #: 168). She received a non-disability finding on September 21, 2015. (ECF No. 8, PageID #: 165).

ALJ held a hearing, during which Claimant, represented by counsel, and an impartial vocational expert testified. (ECF No. 8, PageID #: 44). On December 4, 2018,[2] the ALJ issued a written decision determining Claimant was not disabled. (ECF No. 8, PageID #: 41). The ALJ's decision became final on September 30, 2019, when the Appeals Council declined further review. (ECF No. 8, PageID #: 30). Claimant appealed the denial to the U.S. District Court for the Northern District of Ohio and obtained a stipulated remand. (ECF No. 8, PageID #: 1107, 1143). Shortly after filing the complaint in federal court, Claimant filed another application for SSI on November 14, 2019.[3] (ECF No. 8, PageID #: 1326).

Upon remand from the district court, the Appeals Council ordered the ALJ to provide "further consideration to the treating source opinions from Dr. [Gwen] Haas and Dr. [Van] Warren pursuant to the provisions of 20 CFR 404.1527 and 416.927, and explain the weight given to such opinion evidence." (ECF No. 8, PageID #: 1146–47). The Appeals Council also consolidated Claimant's applications. (ECF No. 8, PageID #: 1148).

The ALJ held another hearing on November 20, 2020 where Claimant and a vocational expert testified. (ECF No. 8, PageID #: 1020). Claimant was represented by counsel. (ECF No. 8, PageID #: 1020). The ALJ found Claimant not disabled on December 15, 2020. (ECF No. 8, PageID #: 1017). Claimant appealed the decision, and the Appeals Council declined to assume jurisdiction of the case. (ECF No. 8, PageID #: 1004).

---

[2] The Court notes that Claimant incorrectly stated the ALJ issued his decision on November 29, 2018. (*See* ECF No. 11-1, PageID #: 2090).

[3] The Court uses the date from the Appeals Council decision consolidating Claimant's cases.

Accordingly, Claimant filed her second complaint in federal court on April 5, 2022, challenging the Commissioner's final decision. (ECF No. 1). The parties have completed briefing in this case. (ECF Nos. 11-1, 14). Claimant asserts the following assignments of error:

(1)     Whether the administrative law judge erred in his analysis of the opinions of Dr. Van Warren, the plaintiff's treating rheumatologist, and Dr. Gwen Haas, the plaintiff's primary care physician, under the treating physician rule.

(2)     Whether substantial evidence supports additional limitations which were not included in the administrative law judge's residual functional capacity assessment.

(ECF No. 11-1, PageID #: 2089).

## III.     Background

### A.  Relevant Medical Evidence

The ALJ summarized Claimant's health records and symptoms:

> The claimant underwent a CPAP/Bi-level titration report because she had documented obstructive sleep apnea with complaints of snoring, excessive daytime sleepiness, morning headaches, and frequent awakenings (Ex. B30F/14). The study showed normal sleep onset and decreased sleep efficiency (Ex. B30F/15). CPAP therapy showed remarkable improvement in her respiratory events.

> The claimant treated in the emergency department on October 7, 2015 for right shoulder and left hip pain that was worsening (Ex. B3F/10). She rated her pain as 8/10 on an increasing pain scale. On exam, there was tenderness in the right shoulder and limited range of motion (Ex. B3F/12). She had tenderness in the left lateral hip and limited range of motion. There was no swelling. She was diagnosed with chronic hip and shoulder pain.

> On October 13, 2015, Jessica Bann, PC-CR saw the claimant at OhioGuidestone and reported that she received pain killer injections in the emergency department due to excessive joint pain (Ex. B29F/155). She reported conflict with her psychiatrist. She expressed her anger. She reported visual hallucinations of her mother.

> At OhioGuidestone on December 4, 2015, the claimant stated that

3

she was no longer sleep walking or seeing things (Ex; B5F/2). The claimant reported that her mood had been generally good. She was diagnosed with major depressive disorder with psychosis.

On December 9, 2015, the claimant saw Dr. Van Warren, complaining of generalized musculoskeletal pain, tingling in her hands and feet, and a burning sensation in the soles of her feet and the tips of her fingers (Ex. B13F/7). She reported that the pain involved primarily her neck and all four extremities. She reported that she was diagnosed with fibromyalgia in 2013. She had some pale discoloration of her fingers with exposure to the cold. On exam, she had mild soft tissue thickening over the proximal digits of some of the digits on both hands, both wrists, kneel, and right ankle. There was tenderness in the lower back. Her straight leg raising tests were normal in a seated position. She had pain on passive motion of the right shoulder. Dr. Van Warren stated that her joint swelling, positive SSB antibody, and negative ANA were all suggestive of a connective tissue disorder, possibly Sjogren's syndrome (Ex. B13F/14). He ordered more laboratory tests.

OhioGuidestone records on February 1, 2016 showed that the claimant was treated with Cymbalta and Abilify for bipolar disorder (Ex. B29F/15). She was still irritable and had mood swings. She was easily agitated and feeling on edge with outburst of cursing or yelling. She was sleeping four hours per night. She reported nightmares two or three times a week. She used ambien with relief. She reported no more auditory hallucinations since 2014. She was seeing shadows a few times a week. Leslie Thomas, CNP added Doxepin to her medications (Ex. B29F/18). Ms. Thomas diagnosed the claimant with major depressive disorder and anxiety state.

The claimant treated at OhioGuidestone on February 29, 2016 and reported that she was still having sleep issues (Ex. B9F/26). She could not tolerate a CPAP machine. She reported some difficulty with communicating. For example, she had trouble getting words out daily. She reported outbursts for small things and she cursed at people. The claimant reported a history of physical and sexual abuse as a child. Her ex-boyfriend murdered her aunt and then he killed himself.

Dr. Van Warren saw the claimant on March 16, 2016 and complained of continued lower back pain and weakness in the lower extremities (Ex. B13F/15). She was taking prednisone, but had little improvement. Her laboratory findings showed a low titer positive ANA with negative ANA and normal muscle enzymes, suggesting that her lower back pain was more mechanical in nature. He

4

suggested that she pursue treatment with pain management.

Records from Leslie Thomas, CNP on April 25, 2016 showed that the claimant was still having trouble staying asleep (Ex. B29F/27). She could not tolerate her CPAP machine.

On June 16, 2016, the claimant treated with Victoria Glazer, CNP to follow up on her diabetes (Ex. B6F/7). She reported that she did not double her metformin dose as advised. Her blood glucose level was 107 at the appointment (Ex. B6F/8).

Dr. Van Warren treated the claimant on July 7, 2016 for pain in her knees and shoulders (Ex. B7F/5). She reported morning stiffness that lasted up to 15 minutes and discoloration in her fingers and toes with cold exposure. On exam, she had normal range of motion in the upper and lower extremity joints. She had sensation of weakness in her arms and legs. There was tenderness in her supraspinatus muscles bilaterally. There was a faintly erythematous rash on her upper back. Dr. Van Warren noted that the claimant had systemic lupus erythematosus with recurrent mouth sores, photosensitivity, arthralgias, rash, and positive ANA (Ex. B7F/5). He suggested that she do stretching exercises for the lower back. She had to increase the Plaquenil to a half tablet each morning and a whole tablet every evening.

On January 11, 2017, Jacqueline McDaniel, CNP treated the claimant who said she had no side effects related to her medication management (Ex. B29F/45). She said her Lyrica and Tramadol were effective for controlling her pain. Ms. McDaniel increased her Melatonin to help with sleep (Ex. B29F/48). The claimant was weaned off prednisone and lost 50 pounds (Ex. B29F/57).

On August 24, 2017, Jacqueline McDaniel, CNP saw the claimant who reported that her medications were effective and she did not want to increase them (Ex. B29F/33). She slept four hours per night. She said she did not use her CPAP machine because she could not keep it on her face. She previously on steroids for six months due to pain, inflammation, and respiratory issues, but she was now off steroids. Examination showed that she was pleasant, cooperative, and answered questions appropriately (Ex. B29F/34).

Dr. Van Warren saw the claimant again on November 9, 2016 for pain in both hips, both shoulders, both knees, and both elbows (Ex. B13F/28). On exam, she had mild soft tissue swelling on the dorsal aspect of the right wrist more so than the left wrist. There was tenderness in the wrists, shoulders, and knees. Dr. Van Warren

stated that her diagnosis was Sjogren's syndrome with myalgias and arthralgias not controlled by hydroxychloroquine.

Spirometry testing on November 9, 2017 showed small airways disease and significant improvement in the mild flow rates with administration of bronchodilator (Ex. B30F/7).

On January 11, 2017, the claimant received mental health treatment for her bipolar disorder and insomnia (Ex. B9F/2). Her medications were Cymbalta, Abilify, Vistaril, and melatonin. She was still sleeping only four hours per night. She took Lyrica and Tramadol for pain. The claimant stated that she only slept four hours a night and she read 20 hours per day (Ex. B9F/64).

OhioGuidestone records dated April 10, 2017 showed that the claimant's hemoglobin A1c was down to 4.9% after she lost 50 pounds (Ex. B12F/2).

Babu Eapen, M.D. treated the claimant on October 9, 2017 and reported that she was having asthma attacks two or three times per day (Ex. B31F/2). She was using a nebulizer and Ventolin. He diagnosed her with mild intermittent asthma without complication and obstructive sleep apnea syndrome. She reported that she had mild cough, wheezing, and no fever or sweating. Examination showed full range of motion, normal motor strength, and sensation intact (Ex. B31F/3).

On October 26, 2017, Dr. Van Warren treated the claimant who complained of discomfort in her arms, fingers, and lower extremities (Ex. B15F/5). She had a locking sensation in her elbows, knees, and the right side of her jaw. Examination showed normal range of motion in all extremities without joint effusions. She had mild tenderness in the proximal volar aspect of the right forearm. Tinel sign was normal in both wrists. There was slight crepitus on range of motion of the elbows and knees. There was mild medial laxity of the left knee. There was crepitus on passive movement of both patellas. Straight leg raising was normal bilaterally in the seated position.

Pulmonary function testing on November 9, 2017 showed small airway disease with significant improvement with bronchodilators (Ex. B17F/6).

Babu Eapen, M.D. treated the claimant on November 18, 2017 for mild intermittent asthma without complication, obstructive sleep apnea syndrome, and overweight (Ex. B18F/2). On exam, she had

6

normal motor strength in all extremities and her sensory examination was intact (Ex. B18F/3).

On November 20, 2017, Gwen Haas, M.D. treated the claimant for back pain (Ex. B32F/33). She reported difficulty walking and with balance. Physical examination showed her heart and breath sounds were normal (Ex. B32F/34). She had no swelling, joint deformities, or gross abnormalities. She diagnosed the claimant with diabetes, Sjogren's disease, acute back pain, arthralgia, and lupus erythematosus.

On December 27, 2017, the claimant saw Natajlia Benn, APRN, CNP and reported that she was stressed lately (Ex. B29F/69). She was having issues with her knees and legs and was seeing a rheumatologist. She stated that the more stressed she was, the more her lupus worsened. She was separated from her husband and her anxiety was high, making her chest hurt. She was driving and took her medications at night so she did not sleep all day. Her medications were Cymbalta, Abilify, Vistaril, and Melatonin.

Natajlia Benn, APRN, CNP saw the claimant on March 21, 2018 who reported some stressors because her son was dropping out of college (Ex. B29F/75). She reported that her knees per popping and she felt overwhelmed because she was taking so many medications.

On May 21, 2018, Babu Eapen, M.D. treated the claimant who reported that she had a CPAP at home, but the person who was supposed to come out and adjust it never showed (Ex. B31F/8). She was compliant with her inhalers. She complained of difficulty for swallowing for the last month. She was diagnosed with reflux esophagitis on November 27, 2018 by Ajit Shah, M.D. (Ex. B31F/14).

Gwen Haas, M.D. treated the claimant on August 24, 2018. Dr. Haas noted that the claimant drove herself to the office and she was not supported to be driving. The claimant said she did not take her sedating medications today. She no longer needed her spouse to be on FMLA leave because she was only seeing her rheumatologist every three or four months. She noted that the claimant saw a neurologist, who did not give a definitive diagnosis. Dr. Haas deferred to Dr. Van Warren on whether the claimant should be operating a motor vehicle and any other FMLA forms that would be required (Ex. B37F/23).

On November 30, 2018, Dr. Van Warren treated the claimant who stated that she was not in pain (Ex. B24F/14). However, she did

complain of fatigue, some discomfort in her shoulders, and continued memory disturbances. She had good range of motion of the upper and lower extremity joints without any joint effusions. There was tenderness in her shoulders, lower back, calves, and thighs.

Gwen Haas, M.D. treated the claimant on December 3, 2018 and reported she had no difficulty with walking, balance, or performing activities of daily living (Ex. B37F/18). Examination showed no erythema, swelling, or joint deformities (Ex. B37F/19). Microfilament testing showed no sensory deficits.

Ms. Benn saw the claimant again on January 31, 2019 for follow up on her bipolar disorder (Ex. B29F/95, 96). She was going through a divorce and her husband stopped paying the bills. She recently got an eviction notice. She was feeling groggy with Abilify so she did not take it today. She was sleeping four or five hours a night. She was angry with everyone. She was diagnosed with depressive disorder and bipolar disorder (Ex. B29F/99).

Dr. Van Warren saw the claimant on July 24, 2019 for pain in her left rib, bilateral hips, right elbows and bilateral shoulders (Ex. B34F/8). She reported numbness in her forearms. She underwent electromyogram testing in the right upper and lower extremities, but it did not demonstrate any peripheral neuropathy. Examination showed good passive range of motion of the upper and lower extremity joints without joint effusions. Tinel sign was normal at both wrists. There was mild tenderness in the wrists, shoulders, and lateral aspect of the proximal thighs. Straight let raising test was normal bilaterally in a seated position. She was referred for autonomic testing and gastroenterology for her loose bowel movements and GERD.

On July 29, 2019, Gwen Haas, M.D. saw the claimant for follow up on her diabetes (Ex. B32F/11). Sensation in her feet were normal. Examination showed no sensory deficits on microfilament exam.

On August 8, 2019, records showed that the claimant underwent thermoregulatory sweat testing and the findings showed abnormal reflex studies consistent with small fiber neuropathy (Ex. B28F/15).

Mary Canonico saw the claimant on October 19, 2019 who reported that her anxiety and mood were generally stable since the previous visit (Ex. B29F/110). Her sleep remained less than she desired. She was unable to obtain opiate medications to manage pain. Cymbalta did not relive any of her pain. She had an eerie feeling in her room.

On October 31, 2019, Babu Eapen, M.D. treated the claimant and gave her the results of her sleep study, which showed no sleep apnea, and only mild snoring (Ex. B30F/17).

On November 14, 2019, Gwen Haas, M.D. noted that the claimant asked her to complete disability paperwork. The claimant reported no difficulties with walking or imbalance. She reported no issues in performing activities of daily living. Examination showed normal heart sounds and joints were negative for swelling, joint deformities, and gross abnormalities (Ex. B32F/9). She diagnosed the claimant with Sjogrens syndrome, diabetes, fibromyalgia, lupus, and neuropathy.

On December 4, 2019, Dr. Van Warren treated the claimant for fibromyalgia, connective tissue disease, and small fiber neuropathy (Ex. B34F/4). She reported four months of pain in both hands, both elbows, both feet, and low to mid back pain (Ex. B34F/5). He started her on Gabapentin for her pain. She complained of intermittent weakness.

On March 4, 2020, Dr. Van Warren treated the claimant for pain in her elbows, lower back, shoulders, and neck (Ex. B35F/5). She reported flu like symptoms two months ago. She was sleeping better since taking the mycophenolate.

Gwen Haas, M.D. treated the claimant on March 20, 2020 and reported that she was not feeling down, depressed, or hopeless at all (Ex. B37F/6).

On July 15, 2020, Van Warren, M.D. saw the claimant for a follow-up of her generalized pain (Ex. B38F/7). She reported numbness in the tips of the digits of both hands and continued headaches. She had intermittent pain extending into the left lower extremity. She had improvement in her generalized swelling. She was taking topiramate for her symptoms related to small fiber neuropathy. She had frequent bruising on the lower extremities after walking. She was walking and doing stretching exercises.

On September 28, 2020, the claimant denied depression symptoms to Gwen Haas, M.D. (Ex. B40F/5). Examination showed normal sensation in her feet and normal pedal pulses. She denied difficulties in performing activities of daily living. The claimant rated her pain as 8/10 on an increase pain scale (Ex. B40F/6). Dr. Haas diagnosed the claimant with diabetes mellitus, hypertension, demyelinating disease of the central nervous system, Sjogren's disease, and lupus.

(ECF No. 8, PageID #: 1028–35).

**B. Opinion Evidence at Issue**

The opinions of two treating sources are at issue in this case. Dr. Gwen Haas, M.D., treated Claimant for over nine years before the first administrative hearing and authored two opinions in this case. (*See* ECF No. 8, PageID #: 155, 1035, 1039). The ALJ summarized Dr. Haas's December 29, 2015 recommendations:

> she opined that the claimant could occasionally lift and carry 10 pounds (Ex. B4F/1). She could stand a total of 1.5 hours in an 8-hour workday, and for 30 minutes at one time. She could sit intermittently with frequent breaks, but for no longer than one hour at one time. She could rarely climb, balance, or crawl. She could occasionally stoop, crouch, and kneel. The claimant could occasionally to frequently reach (Ex. B4F/2). She could rarely push, pull, or perform fine manipulation. She could occasionally perform gross manipulation. She should not be exposed to heights, moving machinery, or temperature extremes. She has been prescribed a cane and breathing machine. She would need to be able to alternate positions between sitting, standing, and walking at will. She would have moderate pain that would interfere with concentration, take the person off task, and cause absenteeism. She would need to elevate her legs at will to 90 degrees. She would need unscheduled rests all day because she cannot maintain any one position for more than 15-30 minutes.

(ECF No. 8, PageID #: 1035). The ALJ also summarized Dr. Haas's recommendations from November 14, 2019:

> she opined that the claimant could occasionally lift and/or carry 10 pounds due to chronic pain, Sjogren's lupus, and small fiber neuropathy (Ex. B33F/2). She could stand and walk 15 minutes to one half hour total in an 8-hour workday. She could sit for 15-30 minutes in an 8-hour workday. She could rarely climb, balance, stoop, crouch, kneel, and crawl. She could rarely reach, push, pull, and perform fine and gross manipulation (Ex. B33F/3). She not be exposed to heights, moving machinery, or temperature extremes. She was prescribed a cane and breathing machine for asthma episodes. She would need to alternate positions between sitting, standing, and walking. She had severe pain that interfered with

concentration, took her off-task, and caused absenteeism. She would
need to elevate her legs to 120 degrees. She required additional
unscheduled rest periods during an 8-hour workday outside of a
standard lunch and two breaks. She would be unable to perform any
usual work duties.

(ECF No. 8, PageID #: 1039).

Dr. Van Warren, M.D., also offered an opinion for this case. Dr. Warren, a rheumatologist,

had been treating Claimant since 2015. (ECF No. 8, PageID #: 155). The ALJ summarized his

2018 opinion in his decision:

He opined that the claimant could lift and/or carry 20 pounds
occasionally and 10 pounds frequently. She could stand and/or walk
5 hours in an 8-hour workday, and for 1 hour without interruption.
She did not have any limitations with sitting. She could rarely climb,
balance, kneel, or crawl. She could occasionally stoop or crouch.
She could occasionally reach, push/pull, and perform fine and gross
manipulation (Ex. B27F/2). She could not work around heights,
moving machinery, temperature extremes and pulmonary irritants.
She had moderate pain, which would take her off-task and cause
absenteeism. She would need one additional break outside of two
standard fifteen-minute breaks and a 30-minute lunch.

(ECF No. 8, PageID #: 1037).

IV.    The ALJ's Decision

The ALJ made the following findings relevant to this appeal:

2. The claimant has not engaged in substantial gainful activity since
September 22, 2015, the alleged onset date (20 CFR 404.1571 et
seq., and 416.971 et seq.).

3. The claimant has the following severe impairments:
demyelinating disease of the central nervous system, irritable bowel
syndrome, Sjogren's syndrome, peripheral neuropathy, depression,
and anxiety (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of
impairments that meets or medically equals the severity of one of
the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1
(20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925
and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could sit, stand, or walk about 6 hours in an 8-hour workday. She can push/pull as much as she can lift/carry. She can frequently operate hand controls bilaterally. She can frequently handle, finger, and feel bilaterally. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can only occasionally balance, stoop, kneel, crouch, or crawl. She can never work at unprotected heights. She cannot work around dangerous moving machinery. She can work around no more than frequent dust, odors, fumes, and pulmonary irritants. She can understand, remember, and carry out simple tasks, but not at a strict production rate pace. She can tolerate occasional and superficial interactions with supervisors, coworkers and the public with superficial defined as no arbitration, negotiation, confrontation, mediation, or being responsible for the safety or supervision of others.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 22, 2015, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(ECF No. 8, PageID #: 1023, 1025, 1028, 1040, 1041).

## V.      Law & Analysis

### A.  Standard of Review

The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 320 (6th Cir. 2015); *see also* 42 U.S.C. § 405(g). "[S]ubstantial evidence is defined as 'more than a scintilla of evidence but less than a

preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)).

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (en banc)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently." *Id.* (citing 42 U.S.C. § 405(g); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059–60 (6th Cir. 1983)).

**B. Standard for Disability**

The Social Security regulations outline a five-step process that the ALJ must use in determining whether a claimant is entitled to SSI or DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of her residual functional capacity ("RFC"); and (5) if not, whether, based on the claimant's age, education, and work experience, she can perform other work found in the national economy. § 404.1520(a)(4)(i)–(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642–43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that she is disabled and, thus, entitled to benefits. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish

whether the claimant has the RFC to perform available work in the national economy. *Id.*

## VI.    Discussion

Claimant raises two issues on appeal. First, she argues the ALJ erred in his evaluation of the treating source opinions. (ECF No. 11-1, PageID #: 2089). Second, she argues that substantial evidence does not support the RFC. (ECF No. 11-1, PageID #: 2089). The Court addresses each issue in turn.

### A.  Treating Source Opinions

Claimant argues that the ALJ's treatment of Dr. Haas's 2015 opinion and Dr. Warren's 2019 opinion were inadequate, as he used the same "perfunctory" analysis to reject the experts' restrictions. (ECF No. 11-1, PageID #: 2114). She challenges the ALJ's reliance on positive and negative findings, citing a number of records she argues support the experts' opinions, and argues the ALJ failed to build a logical bridge. (ECF No. 11-1, PageID #: 2115). Claimant also points out that the ALJ failed to assign weight to Dr. Haas's 2019 opinion. (ECF No. 11-1, PageID #: 2110). Indeed, the ALJ failed to assign weight to the 2019 opinion and Dr. Warren's 2018 opinion. (*See* ECF No. 8, PageID #: 1037, 1039). The Commissioner argues that the ALJ's analysis conformed with social security regulations and that Claimant failed to cite any record demonstrating the ALJ's findings were not supported by substantial evidence. (ECF No. 14, PageID #: 2139). Notably, the Commissioner does not address the ALJ's failure to assign weight to the 2018 and 2019 opinions.

Under the treating source rule, an ALJ "must" give a treating source opinion controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (citing *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting § 404.1527(d)(2) (eff. to July 31, 2006))).

"It is an error to give an opinion controlling weight simply because it is the opinion of a treating source if it is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or if it is inconsistent the with other substantial evidence in the case record." Social Security Ruling ("SSR") 96–2p, 1996 WL 374188, at *2 (July 2, 1996).

"If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley*, 581 F.3d at 406 (citing *Wilson*, 378 F.3d at 544); *see also* § 404.1527(c)(2) (eff. Mar. 27, 2017).[4] "In addition to balancing the factors to determine what weight to give a treating source opinion denied controlling weight, the agency specifically requires the ALJ to give good reasons for the weight actually assigned." *Cole v. Astrue*, 661 F.3d 931, 938 (2011); § 404.1527(c)(2). "These reasons must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR No. 96–2p, 1996 WL 374188, at *5 (Soc. Sec. Admin. July 2, 1996)). "This procedural

---

[4] The Court notes that beginning March 27, 2017, the Social Security Administration used different statutes to interpret opinion evidence in claims filed before March 27, 2017 (§ 404.1527) and those filed after that date (§ 404.1520c). As this claim was filed before March 27, 2017, the ALJ relied on § 404.1527 to evaluate the treating source opinions. The Court also notes that there are multiple iterations of § 1527 that various cases have cited depending on the date of their decision. For example, *Wilson*, and other cases cited in this order, refers to an older version of § 1527, where subsection (d) referred to the factors an ALJ reviews in assigning weight to a treating source. However, in the most recent adaption of the statute, effective March 27, 2017, subsection (c) summarizes these factors. Nonetheless, the Court will quote and analyze the cases verbatim, referring to § 1527(d)(2), rather than what is now (c)(2). In its analysis, however, the Court will refer to current applicable statute which is § 1527(c)(2).

requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson*, 378 F.3d at 544). It also ensures claimants understand the disposition of their cases. *Wilson*, 378 F.3d at 544. The ultimate question is whether the Commissioner's decision is supported by substantial evidence and whether it was made pursuant to proper legal standards. *Cole*, 661 F.3d at 939.

Here, the ALJ reviewed two opinions from Dr. Haas and one opinion from Dr. Warren. It is undisputed that these physicians were treating sources. (*See* ECF No. 8, PageID #: 1035, 1037; ECF No. 11-1, PageID #: 2089; ECF No. 14, PageID #: 2134). But despite the treating relationships, the ALJ assigned "little weight" to Dr. Haas's December 2015 opinion and failed to assign weight to Dr. Haas's November 2019 opinion and Dr. Warren's August 2018 opinion. (ECF No. 8, PageID #: 1035, 1037–38, 1039).

### i. Dr. Haas's 2015 opinion

The ALJ first reviewed and summarized Dr. Haas's December 2015 opinion:

> claimant could occasionally lift and carry 10 pounds (Ex. B4F/1). She could stand a total of 1.5 hours in an 8-hour workday, and for 30 minutes at one time. She could sit intermittently with frequent breaks, but for no longer than one hour at one time. She could rarely climb, balance, or crawl. She could occasionally stoop, crouch, and kneel. The claimant could occasionally to frequently reach (Ex. B4F/2). She could rarely push, pull, or perform fine manipulation. She could occasionally perform gross manipulation. She should not be exposed to heights, moving machinery, or temperature extremes. She has been prescribed a cane and breathing machine. She would need to be able to alternate positions between sitting, standing, and walking at will. She would have moderate pain that would interfere with concentration, take the person off task, and cause absenteeism. She would need to elevate her legs at will to 90 degrees. She would need unscheduled rests all day because she cannot maintain any one position for more than 15-30 minutes.

(ECF No. 8, PageID #: 1035). The ALJ afforded the opinion "little weight." (ECF No. 8, PageID #: 1035). As Dr. Haas was a treating source, she was entitled to controlling weight unless the ALJ

found her opinion to be unsupported by the medical record or inconsistent with substantial evidence in the case record. *See* § 1527(c)(2). Here, the ALJ found that Dr. Haas's opinion was "unsupported and inconsistent with the record as whole." (ECF No. 8, PageID #: 1035). Thus, the ALJ withheld controlling weight and gave the opinion "little weight" for the following reasons:

> Examination showed normal range of motion in all extremities without joint effusions (Ex. B15F/5). She had mild tenderness in the proximal volar aspect of the right forearm. Tinel sign was normal in both wrists. There was slight crepitus on range of motion of the elbows and knees. There was mild medial laxity of the left knee. There was crepitus on passive movement of both patellas. Straight leg raising was normal bilaterally in the seated position. On November 30, 2018, Dr. Van Warren treated the claimant who stated that she was not in pain (Ex. B24F/14). However, she did complain of fatigue, some discomfort in her shoulders, and continued memory disturbances. She had good range of motion of the upper and lower extremity joints without any joint effusions. There was tenderness in her shoulders, lower back, calves, and thighs. On November 14, 2019, Gwen Haas, M.D. noted that the claimant asked her to complete disability paperwork. The claimant reported no difficulties with walking or imbalance. She reported no issues in performing activities of daily living. Examination showed normal heart sounds and joints were negative for swelling, joint deformities, and gross abnormalities (Ex. B32F/9). On July 15, 2020, Van Warren, M.D. saw the claimant for a follow-up of her generalized pain (Ex. B38F/7). She reported numbness in the tips of the digits of both hands and continued headaches. She had intermittent pain extending into the left lower extremity. She had improvement in her generalized swelling. She was taking topiramate for her symptoms related to small fiber neuropathy. She was walking and doing stretching exercises, indicating some improvement in her symptoms. On September 28, 2020, the claimant denied depression symptoms to Gwen Haas, M.D. (Ex. B40F/5). Examination showed normal sensation in her feet and normal pedal pulses. She denied difficulties in performing activities of daily living. Therefore, the examination findings and the claimant's reports of walking and performing stretching exercises are consistent with the ability to perform less than a full range of light work.

(ECF No. 8, PageID #: 1035–36).

Claimant argues that the ALJ erred in giving Dr. Haas's opinion little weight for the three reasons. First, "the medical evidence provided strong support for . . . Dr. Haas'[s] opinions and assigned limitations." (ECF No. 11-1, PageID #: 2112). Second, she claims the ALJ failed to give good reasons for affording the opinion little weight as the ALJ's reasoning for rejecting Dr. Haas's and Dr. Warren's opinions were nearly the same. (ECF No. 11-1, PageID #: 2114). Finally, Claimant argues that the ALJ "cited several negative examination findings as reasons for rejecting . . . Dr. Haas'[s] opinion[.]" (ECF No. 11-1, PageID #: 2115).

Claimant fails to develop her first argument as she simply raises the argument in passing but fails to address it further. The argument is therefore waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones.").

In her second argument, Claimant specifically challenges the wording the ALJ used to deny controlling weight to Dr. Haas and Dr. Warren, arguing that it "directly cuts against the good specific reasons requirements of the treating physician rule." (ECF No. 8, PageID #: 2114). She claims a "separate distinct analysis should be required for each doctor's opinion." (ECF No. 8, PageID #: 2114). The Court agrees that except for a reference to Claimant's Lupus symptoms when reviewing Dr. Warren's opinion, the ALJ indeed provided the same analysis to discount both opinions. (*Compare* ECF No. 8, PageID #: 1035–36 *with* 1037–38). Nevertheless, Claimant's belief of what the rule "should" require and what is actually required differ.

Social Security Regulations provide that an ALJ must provide "good reasons" for assigning an opinion specific weight and should consider factors including the "[l]ength of the treatment

relationship and the frequency of examination" and the "[n]ature and extent of the treatment relationship," among other factors. § 404.1527(c)(2). However, there is no regulation prohibiting the ALJ from using the same analysis for rejecting both opinions, and Claimant cites no authority supporting this argument. Rather, the regulations simply require an ALJ provide good reasons for their findings that are "supported by the evidence in the case record, and . . . [are] sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reason for that weight." *Blakley*, 581 F.3d at 406–07 (citation omitted).

Here, the ALJ provided good reasons that meet the requirements. For example, while Dr. Haas recommended Claimant "rarely" balance, the ALJ noted Claimant reported no imbalance issues. (*See* ECF No. 8, PageID #: 1035–36). Likewise, Dr. Haas opined that Claimant could stand for a total of one and a half hours in an eight-hour day, would endure moderate pain affecting concentration, and required various restrictions on stooping, crouching, kneeling, and reaching. (ECF No. 8, PageID #: 1035). But the ALJ observed that Claimant showed normal range of motion, reported no difficulties walking and stretching, denied pain, and repeatedly stated she had no difficulties with daily activities. (ECF No. 8, PageID #: 1035–36). Overall, the ALJ found that these records failed to support Dr. Haas's recommendations and demonstrated numerous inconsistencies between the opinion and the evidence. The ALJ concluded that "[t]he examination findings and the claimant's reports of walking and performing stretching exercises are consistent with the ability to perform less than a full range of light work." (ECF No. 8, PageID #: 1036). Substantial evidence therefore supports the ALJ's determination that Dr. Haas's opinion was unsupported by and inconsistent with the record. The Court therefore finds no reason to disturb the ALJ's decision to afford Dr. Haas's opinion little weight.

19

Claimant lastly argues the ALJ "played doctor" in referencing negative findings that "provided no basis to reject [Dr. Haas's and Dr. Warren's] findings." (ECF No. 11-1, PageID #: 2115–16). Claimant specifically challenges the ALJ's references to her negative Tinel sign, normal range of motion, and negative straight leg raising tests to attack the treating source opinions. (ECF No. 11-1, PageID #: 2115). Claimant appears to raise this argument to challenge the ALJ's treatment of Dr. Haas's and Dr. Warren's opinions. However, Claimant only develops this argument as it relates to Dr. Warren. To the extent she raises it in relation to Dr. Haas's opinion, it is waived for failure to fully brief the issue. *See McPherson*, 125 F.3d at 995–96. But even if Claimant did not waive the argument, it fails for the same reasons discussed below in the Court's review of Dr. Warren's opinion.

Substantial evidence supports the ALJ's decision to afford this opinion little weight. Accordingly, the Court will not disturb the ALJ's finding.

### ii. Dr. Haas's 2019 opinion

The ALJ also withheld controlling weight from Dr. Haas's 2019 opinion. (ECF No. 8, PageID #: 1039). Dr. Haas recommended the following limitations in 2019:

> claimant could occasionally lift and/or carry 10 pounds due to chronic pain, Sjogren's lupus, and small fiber neuropathy (Ex. B33F/2). She could stand and walk 15 minutes to one half hour total in an 8-hour workday. She could sit for 15-30 minutes in an 8-hour workday. She could rarely climb, balance, stoop, crouch, kneel, and crawl. She could rarely reach, push, pull, and perform fine and gross manipulation (Ex. B33F/3). She not be exposed to heights, moving machinery, or temperature extremes. She was prescribed a cane and breathing machine for asthma episodes. She would need to alternate positions between sitting, standing, and walking. She had severe pain that interfered with concentration, took her off-task, and caused absenteeism. She would need to elevate her legs to 120 degrees. She required additional unscheduled rest periods during an 8-hour workday outside of a standard lunch and two breaks. She would be unable to perform any usual work duties.

(ECF No. 8, PageID #: 1039). The ALJ explained his decision to withhold controlling weight:

> Dr. Haas['s] opinion is unsupported and inconsistent with the record as a whole. Specifically, this opinion appears to be based upon the claimant's subjective complaints. The same day the opinion was given, Dr. Haas treated the claimant. On November 14, 2019, Gwen Haas, M.D. noted that the claimant asked her to complete disability paperwork. The claimant reported no difficulties with walking or imbalance. She reported no issues in performing activities of daily living. Examination showed normal heart sounds and joints were negative for swelling, joint deformities, and gross abnormalities (Ex. B32F/9). Therefore, her opinion given that day was inconsistent with both the history that Dr. Haas took and her examination findings. On September 28, 2020, the claimant denied depression symptoms to Gwen Haas, M.D. (Ex. B40F/5). Examination showed normal sensation in her feet and normal pedal pulses. She denied difficulties in performing activities of daily living.

(ECF No. 8, PageID #: 1039). Despite withholding controlling weight, the ALJ failed to indicate what weight he afforded the opinion. Claimant argues that remand is necessary because the ALJ made three errors in evaluating Dr. Haas's 2019 opinion. First, Claimant argues the ALJ did not provide the weight that he afforded the opinion. (ECF No. 11-1, PageID #: 2110). Second, Claimant argues that "the ALJ failed to provide adequate reasoning as to why Dr. Haas['s] opinion should be rejected." (ECF No. 11-1, PageID #: 2117). Third, Claimant argues that the ALJ "failed to recognize the lengthy doctor-patient relationship Dr. Haas and [Claimant] held." (ECF No. 11-1, PageID #: 2117).

Claimant correctly notes that it was error for the ALJ to fail to note the specific weight he assigned to Dr. Haas's 2019 opinion. *See Wilson*, 378 F.3d at 544–46 (quoting SSR 96–2p, 1996 WL 374188, at *5 (1996)) ("[A] decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'")

In *Wilson*, the Sixth Circuit held that the ALJ erred where he failed to give good reasons for giving a treating source's opinion "little weight" and that even if substantial evidence supported the ALJ's ultimate decision, "reversal is required [when] the agency fail[s] to follow its own procedural regulation." *Id*. Thus, the Court found that failure to follow this procedural requirement was not harmless error. *Id*. Nevertheless, the Court illustrated several instances where "a violation of the procedural requirement of § 1527(d)(2) could [] constitute harmless error:"

> For instance, if a treating source's opinion is so patently deficient that the Commissioner could not possibly credit it, a failure to observe § 1527(d)(2) may not warrant reversal. There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, it may be irrelevant that the ALJ did not give weight to the treating physician's opinion, and the failure to give reasons for not giving such weight is correspondingly irrelevant. Or perhaps a situation could arise where the Commissioner has met the goal of § 1527(d)(2)—the provision of the procedural safeguard of reasons—even though she has not complied with the terms of the regulation.

*Id*. at 547 (citations omitted). In the years following *Wilson*, the Sixth Circuit further interpreted the third exception where an ALJ "met the goal of § 1527(d)(2)" despite failing to adhere to the rule. *See Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 469–72 (6th Cir. 2006); see *also Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 440 (6th Cir. 2010) ("An ALJ may accomplish the goals of this procedural requirement by indirectly attacking the supportability of the treating physician's opinion or its consistency with other evidence in the record."); *Brock v. Comm'r of Soc. Sec.*, 368 F. App'x 622, 625 (6th Cir. 2010) (finding that the ALJ afforded proper weight to a treating source and provided good reasons for the finding since he "challenge[d] the supportability and consistency of [the treating source's] diagnoses with the other evidence in the record in an indirect but clear way"). However, these circumstances are "rare." *Nelson*, 195 F. App'x at 472.

22

In *Hall*, the ALJ withheld controlling weight from a treating source—a Dr. Caudill, who opined on the claimant's back pain—but failed to assign another weight, in violation of § 1527(d)(2). 148 F. App'x at 464. The Court found that failing to assign a weight amounted to "largely reject[ing] the opinion." *Id.* However, the Court relied on *Wilson*'s third exception and noted that "the ALJ could have met the goal of providing good reasons by either his analysis of Dr. Caudill's other opinions or his analysis of Hall's back problems in general." *Id.* Upon review of Dr. Caudill's other opinions, the Court found that the ALJ's treatment of the opinions did not meet the goal of § 1527(d)(2) since the opinions covered issues unrelated to back pain. *Id.* at 465. The Court next found that the ALJ's review of the claimant's back pain did not necessarily meet the goals of the provision either because "the ALJ's discussion of Hall's back ailments does not elucidate the ALJ's reasons for rejecting Dr. Caudill's lifting/sitting/standing restriction." *Id.* Moreover, the ALJ's review of other sources' opinions with relevant restrictions did not indicate why the ALJ rejected Dr. Caudill's opinion, especially because the ALJ did not adopt the others' opinions either. *Id.* Thus, the Court found that the *Wilson* exception did not apply and remanded the case for the ALJ's failure to comply with § 1527(d)(2). *Id.* at 467.

In contrast, the *Nelson* Court found an error harmless where the ALJ "met the goal of § 1527(d)(2)" since his evaluation of the medical record "indirectly attack[ed] both the supportability of [two treating source] opinions and the consistency of those opinions with the rest of the record evidence." 195 F. App'x at 470. The ALJ "did not specifically address Dr. Cook's opinions regarding [the claimant]" and only "briefly addressed the evidence from Dr. Peterson, noting that 'Dr. Peterson opined that due to the claimant's severe social anxiety, he could not relate to people.'" *Id.* at 466. The ALJ also failed to assign a weight to these opinions, although the doctors "found considerable limitations" due to the claimant's psychological health. *Id.* at 463,

470–71. But upon review of the record, the Court found that the ALJ had thoroughly reviewed other mental impairment opinions which differed significantly from those of Drs. Cook and Peterson. *Id.* at 471. The ALJ had explicitly found those opinions consistent with the record, thus implicitly labelling the opinions of Drs. Cook and Peterson as inconsistent with the record. *Id.* The Court distinguished the case from *Hall* since the *Nelson* ALJ adopted the other opinions' limitations in the RFC while the *Hall* ALJ failed to adopt any other opinions' restrictions, obfuscating its rationale for rejecting Dr. Caudill's opinion. *Id.* Finally, the Court found that the ALJ implicitly attacked the supportability of Drs. Cook and Peterson's opinion:

> the ALJ stated that 'there are no clinical and diagnostic findings to establish [that Nelson] has conditions that would significantly compromise' his RFC. That passage, although it does not directly address the medical opinions of Drs. Cook and Peterson, is an indirect attack on the supportability of those opinions. And indeed, Dr. Cook's and Dr. Peterson's opinions are not well-supported nor explained by medical signs and laboratory findings.

*Id.* The Court listed several examples in support of this finding and ultimately concluded that the ALJ "implicitly provided sufficient reasons for not giving those opinions controlling weight, and indeed for giving them little or no weight overall," rendering the ALJ's violation of § 1527(d)(2) harmless. *Id.* at 472.

Returning to the instant case, this Court finds that the ALJ's error in failing to assign a specific weight to Dr. Haas's 2019 opinion more akin to the ALJ's decision in *Nelson*. While the ALJ here did not afford Dr. Haas's 2019 opinion a specific weight, he met the goal of § 1527(c)(2) by implicitly supporting his findings throughout the decision. If anything, the ALJ provided *more* explanation than the *Nelson* ALJ in explaining why he rejected the opinion. As printed above, the ALJ provided an explicit explanation for why the opinion was unsupported by and inconsistent with the record. (*See* ECF No. 8, PageID #: 1039). He specifically noted that the opinion was a

24

part of disability paperwork Dr. Haas completed on November 14, 2019. (ECF No. 8, PageID #: 1039). However, the ALJ found the opinion unsupported by Dr. Haas's treatment records from an appointment the same day since Claimant did not report any difficulties walking, balancing, or completing daily activities. (ECF No. 8, PageID #: 1039). This contradicted Dr. Haas's extreme recommendations that Claimant stand and walk for fifteen to thirty minutes and sit for fifteen to thirty minutes during an eight-hour day. (*See* ECF No. 8, PageID #: 1039). The ALJ also noted that Dr. Haas reported that Claimant showed normal heart sounds and her joints were negative for swelling, deformities, and gross abnormalities. (ECF No. 8, PageID #: 1039). Based on these notes, he found that Dr. Haas's recommendations were "inconsistent with both the history that Dr. Haas took and her examination findings." (ECF No. 8, PageID #: 1039). This explicit explanation for withholding controlling weight is overwhelmingly more detailed than in *Nelson* where the ALJ "did not specifically address Dr. Cook's opinions . . . . [and] briefly addressed the evidence from Dr. Peterson." *See* 195 F. App'x at 465. Moreover, the ALJ here repeatedly referenced Dr. Haas's examinations and medical records throughout the RFC section, touching on additional § 1527(c)(2) factors including the extent and nature of the treating relationship. (*See* ECF No. 8, PageID #: 1025, 1026, 1030–35).

As the *Nelson* Court further found that the ALJ's adoption of other experts' opinions in the RFC implicitly explained the ALJ's rationale for rejecting Drs. Cook and Peterson's opinions, the same happened here. 195 F. App'x at 471. The ALJ noted that he afforded "great weight" to the opinions of Dr. David Knierim, M.D., and Kristen Haskins, Psy.D., state agency consultants who authored restrictions the ALJ accepted almost verbatim in his RFC. (ECF No. 8, PageID #: 1038–39). Dr. Knierim's physical restrictions were quite different from Dr. Haas's recommendations. For example, while Dr. Haas recommended Claimant stand and walk for fifteen to thirty minutes

and sit for fifteen to thirty minutes in an eight-hour day, Dr. Knierim recommended Claimant stand, walk, and sit for six out of eight hours. (*Compare* ECF No. 8, PageID #: 1038 *with* 1039). Likewise, Dr. Knierim recommended frequent fingering and hand control limitations, whereas Dr. Haas limited Claimant to "rarely" reaching, pushing, pulling, and performing fine and gross manipulation. (ECF No. 8, PageID #: 1128–29, 1732). By affording Dr. Knierim's opinion "great weight," and adopting these restrictions in the RFC, the ALJ implicitly demonstrated that he found Dr. Haas's restrictions unconvincing and afforded the opinion "little to no weight overall." *See Nelson*, 195 F. App'x at 471. He therefore met the goal of § 1527(c)(2) by providing ample implicit and explicit explanation of why he rejected the opinion. Further, the ALJ's findings on these opinions are clear enough that remand would be futile. *See Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (reviewing an immigration judge's decision and noting that "[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result") (citations and quotations omitted); *see also Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When remand would be an idle and useless formality, courts are not required to convert judicial review of agency action into a ping-pong game.") (citations and quotations omitted).

Under *Wilson* and *Nelson*, the ALJ committed only harmless error which does not require reversal. Accordingly, the Court will not disturb the ALJ's decision on this matter.

Similarly, Claimant's second argument regarding good reasons is unavailing. (*See* ECF No. 11-1, PageID #: 2114). As demonstrated in the above discussion, the ALJ gave good reasons for withholding controlling weight from the opinion, and his reasoning was supported by the record and clearly indicated his decision to afford the opinion little to no weight.

Claimant makes a final cursory argument that the ALJ failed to recognize the doctor-patient relationship between Dr. Haas and Claimant. (ECF No. 11-1, PageID #: 2117). This argument fails as the ALJ repeatedly referenced the date and purpose of Claimant's appointments with Dr. Haas throughout his decision. (*See* ECF No. 8, PageID #: 1033–35). Moreover, by citing § 1527 in his review of the opinion, the ALJ demonstrated that Dr. Haas was a treating source. The Court therefore rejects this argument.

The ALJ's failure to assign a specific weight to Dr. Haas's 2019 opinion was harmless error since he complied with the goal of § 1527(c)(2). Likewise, substantial evidence supports his decision to reject the opinion. Accordingly, the Court finds no reason to disturb the ALJ's decision.

### iii.  Dr. Warren's 2018 opinion

The ALJ also withheld controlling weight from Dr. Warren's 2018 opinion, despite Dr. Warren's treating relationship. (ECF No. 8, PageID #: 1037). Dr. Warren recommended the following limitations in his opinion:

> claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk 5 hours in an 8-hour workday, and for 1 hour without interruption. She did not have any limitations with sitting. She could rarely climb, balance, kneel, or crawl. She could occasionally stoop or crouch. She could occasionally reach, push/pull, and perform fine and gross manipulation (Ex. B27F/2). She could not work around heights, moving machinery, temperature extremes and pulmonary irritants. She had moderate pain, which would take her off-task and cause absenteeism. She would need one additional break outside of two standard fifteen-minute breaks and a 30-minute lunch.

(ECF No. 8, PageID #: 1037). The ALJ explained his decision to withhold controlling weight:

> the undersigned finds Dr. Van Warren's opinion is unsupported and inconsistent with the record as a whole. While the claimant's lupus symptoms have waxed and waned at times, examination findings after treatment for lupus demonstrate that the claimant had lesser limitations, consistent with the above residual functional capacity findings. Examination showed normal range of motion in all

extremities without joint effusions (Ex. B15F/5). She had mild tenderness in the proximal volar aspect of the right forearm. Tinel sign was normal in both wrists. There was slight crepitus on range of motion of the elbows and knees. There was mild medial laxity of the left knee. There was crepitus on passive movement of both patellas. Straight leg raising was normal bilaterally in the seated position. On November 30, 2018, Dr. Van Warren treated the claimant who stated that she was not in pain (Ex. B24F/14). However, she did complain of fatigue, some discomfort in her shoulders, and continued memory disturbances. She had good range of motion of the upper and lower extremity joints without any joint effusions. There was tenderness in her shoulders, lower back, calves, and thighs. On November 14, 2019, Gwen Haas, M.D. noted that the claimant asked her to complete disability paperwork. The claimant reported no difficulties with walking or imbalance. She reported no issues in performing activities of daily living. Examination showed normal heart sounds and joints were negative for swelling, joint deformities, and gross abnormalities (Ex. B32F/9), indicating some improvement. On July 15, 2020, Van Warren, M.D. saw the claimant for a follow-up of her generalized pain (Ex. B38F/7). She reported numbness in the tips of the digits of both hands and continued headaches. She had intermittent pain extending into the left lower extremity. She had improvement in her generalized swelling. She was taking topiramate for her symptoms related to small fiber neuropathy. She was walking and doing stretching exercises. On September 28, 2020, the claimant denied depression symptoms to Gwen Haas, M.D. (Ex. B40F/5). Examination showed normal sensation in her feet and normal pedal pulses. She denied difficulties in performing activities of daily living.

(ECF No. 8, PageID #: 1037–38). Similar to Dr. Haas's opinions, the ALJ found Dr. Warren's opinion was "unsupported and inconsistent with the record as a whole." (ECF No. 8, PageID #: 1037). Claimant contests the ALJ's decision not to give Dr. Warren's opinion controlling weight. (*See generally* ECF No. 11-1, PageID #: 2110–16). Specifically, Claimant argues that "the ALJ's determination that Dr. Van Warren did not support his opinion was inaccurate." (ECF No. 11-1, PageID #: 2114). Additionally, Claimant again argues that the ALJ failed to give good reasons for affording the opinion little weight as the ALJ's reasoning for rejecting Dr. Haas's and Dr. Warren's opinions were nearly the same. (ECF No. 11-1, PageID #: 2114).

While Claimant fails to raise the issue, the Court notes that similar to Dr. Haas's 2015 opinion, the ALJ did not assign Dr. Warren's opinion any specific weight. This is error. *See Wilson*, 378 F.3d at 544–46. However, as explained above, this is harmless error so long as the ALJ met the goals of § 1527(c)(2) and provided an implicit explanation for rejecting the opinion. *See id.* at 547; *Nelson*, 195 F. App'x at 470.

The ALJ explicitly stated that he withheld controlling weight from the opinion because it was inconsistent with the record and unsupported by the evidence. (ECF No. 8, PageID #: 1037). He also pointed that Claimant's Lupus symptoms "waxed and waned," but after treatment, "[C]laimant had lesser limitations, consistent with the above [RFC] findings." (ECF No. 8, PageID #: 1037–38). This note demonstrates that the ALJ found Dr. Warren's opinion inconsistent with the RFC. The ALJ then referenced a number of records related to Claimant's movement, range of motion, balance, daily activities, and joint health, among other conditions. (*See* ECF No. 8, PageID #: 1037–38). Although the ALJ also used most of these records to discount Dr. Haas's 2015 opinion, that does not lessen the fact that they are similarly inconsistent with and fail to support Dr. Warren's opinions. For example, while Dr. Warren recommended that Claimant occasionally reach, push/pull, and perform fine and gross manipulation, the ALJ noted that Claimant demonstrated "normal" Tinel sign in both wrists and "normal" range of motion in all extremities without joint effusions. (ECF No. 8, PageID #: 1038). The ALJ balanced these records against Claimant's tenderness in her right forearm, discomfort in her shoulder, and subjective reports of numbness in her fingertips, finding that "lesser limitations, consistent with the above [RFC]" were more appropriate. (ECF No. 8, PageID #: 1038). Additionally, Dr. Warren's recommendation that Claimant rarely balance, kneel, or crawl was inconsistent with the ALJ's notes that Claimant reported no imbalance and showed "normal" range of motion in all extremities. (ECF No. 8,

PageID #: 1038). Considering the ALJ's summary of the records, Dr. Warren's recommendation for an additional break and a thirty-minute lunch was not supported by the record or consistent with the evidence. Thus, the ALJ's recitation of the medical evidence demonstrates that the ALJ rejected Dr. Warren's opinion because it was inconsistent with the record. Notably, the ALJ's summary of its reasoning greatly surpasses the explanation offered by the *Nelson* ALJ, as discussed above. *See* 195 F. App'x at 466. The ALJ therefore met the goal of § 1527(c)(2) by reciting the medical evidence that demonstrated Claimant did not require Dr. Warren's restrictions.

Likewise, the ALJ met the goal of § 1527(c)(2) through his discussion and adoption of other experts' opinions, as discussed above. By adopting Dr. Knierim's and Ms. Haskins's opinions in full, the ALJ implicitly demonstrated that he found these restrictions more consistent with the record than Dr. Warren's. Notably, Dr. Knierim recommended Claimant frequently finger and operate hand controls; stand, walk, or sit six of eight hours a day; and occasionally balance, stoop, kneel, crouch, or crawl. (ECF No. 8, PageID #: 1128–29). These limitations are less restrictive than Dr. Warren's recommendations that Claimant occasionally reach, push/pull, and perform fine and gross manipulation; stand and/or walk five of eight hours a day; and rarely balance, kneel, or crawl. (*See* ECF No. 8, PageID #: 1002–03). By assigning "great weight" to Dr. Kneirim's restrictions and adopting them in the RFC, the ALJ implicitly demonstrated that he found Dr. Warren's opinion unconvincing and afforded the opinion "little to no weight overall." *See Nelson*, 195 F. App'x at 471. He therefore met the goal of § 1527(c)(2) by providing ample implicit and explicit explanation for rejecting the opinion. The Court therefore finds no reasons to overturn the ALJ's decision based on this matter.

Claimant's additional argument that "the ALJ's determination that Dr. Van Warren did not support his opinion was inaccurate" is also unavailing. (*See* ECF No. 11-1, PageID #: 2114). In

support of this argument, Claimant argues that Dr. Warren's opinion is supported by the record and cites evidence supporting the opinion. (*See* ECF No. 11-1, PageID #: 2114–16). But Claimant merely highlights that there may be substantial evidence to support an alternative conclusion, which is not enough to disturb the ALJ's finding. *See Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As long as substantial evidence supports the Commissioner's decision, the Court must defer to it, "'even if there is substantial evidence in the record that would have supported an opposite conclusion[.]'" *Id.*

Likewise, Claimant's argument that the ALJ failed to give good reasons for affording the opinion little weight is also unavailing. (*See* ECF No. 11-1, PageID #: 2114). Claimant makes three arguments contending that the ALJ failed to meet the good reasons requirement. First, Claimant argues the ALJ's reasoning for rejecting Dr. Haas's and Dr. Warren's opinions were nearly the same. Second, Claimant argues that the ALJ "played doctor" in referencing negative findings related to Tinel sign, range of motion, and straight leg raises and "provided no basis to reject [Dr. Haas's and Dr. Warren's] findings." (ECF No. 11-1, PageID #: 2115–16). Third, Claimant argues the ALJ failed to build a logical bridge between several positive findings—crepitus in the knees and elbows, forearm pain, and ligament laxity in the left knee—and his rejection of Dr. Warren's opinion. (ECF No. 11-1, PageID #: 2115).

Regarding Claimant's first argument, as discussed above, there is no regulation prohibiting the ALJ from using the same analysis for rejecting both opinions, and Claimant cites no authority supporting this argument. As also demonstrated above, the ALJ provided good reasons that were supported by the evidence in the case record and sufficiently specific to make clear that he gave the opinion little to no weight. *Blakley*, 581 F.3d at 406–07. Thus, the fact that the ALJ used a similar analysis to discount the opinions of Dr. Haas and Dr. Warren is of no consequence.

Claimant's second argument also fails. First, the ALJ was not "playing doctor" in interpreting the medical evidence; he was entitled to review it and make an ultimate disability finding under § 404.1527(d)(1)–(2). Thus, the ALJ was simply doing his job in reviewing this evidence and using it to support his overall determination of the weight to afford Dr. Warren's opinion.

Second, Claimant unsuccessfully offers several alternative conclusions the negative findings could support. (ECF No. 11-1, PageID #: 2116). She specifically argues that "normal" Tinel sign, range of motion, and straight leg raises could actually demonstrate carpal tunnel syndrome, neurological disorders, musculoskeletal problems, or nerve root impingement. (*See* ECF No. 11-1, PageID #: 2116). Likewise, she argues that these conditions are "not characteristic of lupus or Sjogren's Syndrome," implying that the ALJ incorrectly used them to reject Dr. Warren's opinion. (*See* ECF No. 11-1, PageID #: 2116). In listing these conditions and explaining their "real" meaning, Claimant is essentially asking the Court to reweigh the evidence, which it cannot do. *See Avers v. Kijakazi*, No. 3:20-cv-01433, 2021 WL 4291228, at *9 (N.D. Ohio Sept. 21, 2021) (citing *Brainard v. Sec'y of HHS*, 889 F.2d 679, 681 (6th Cir. 1989)). Further, alternative conclusions do not invalidate an ALJ's decision. *See Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) ("The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion."); *Wright*, 321 F.3d at 614. In referencing these records, the ALJ was simply stating they were "normal" and accordingly, were not exacerbating Claimant's overall health, or requiring additional restrictions. Notably, Claimant does not challenge the "normal" findings. Accordingly, substantial evidence supports the ALJ's statement that the conditions were all "normal," and Claimant's suggested alternative conclusions are unavailing.

Moreover, these negative findings are not the only records the ALJ cited in support of his decision. He also reviewed and discussed Claimant's tenderness in her forearm, shoulders, lower back, and legs; crepitus in her knees; subjective reports of pain, fatigue, and discomfort; lack of difficulty walking or balancing; daily activities; lack of joint swelling; "normal" movement; and numbness, among many other records throughout the period at issue. (*See* ECF No. 8, PageID #: 1035–36). Thus, even without the ALJ's references to the challenged records, substantial evidence supports his determinations.

Similarly, the ALJ did not fail to build a logical bridge by supporting his analysis by discussing "positive findings." While the ALJ points out that Claimant suffered from these conditions, he states that they are "mild" or "slight." (ECF No. 8, PageID #: 1038). By describing the limited intensity of each condition, the ALJ builds a logical bridge showing that these conditions are inconsistent with Dr. Warren's restrictive limitations.

Accordingly, any error in the ALJ's analysis of the treating physicians' opinions was harmless as the ALJ met the goal of § 1527(c)(2). *See Wilson*, 378 F.3d at 547. Substantial evidence supports his decision to find the opinions inconsistent with the record, and he provided good reasons—directly and inherently—for the weight assigned to each opinion. Accordingly, remand is not warranted, and the Court will not disturb the ALJ's decision.

## B. RFC

Claimant next argues that substantial evidence does not support the RFC and that the ALJ should have specifically adopted an occasional handling, fingering, and feeling restriction. (ECF No. 11-1, PageID #: 2118). Claimant cites a number of records attempting to demonstrate that this restriction should have been included in the RFC and claims that the ALJ did not consider them in his analysis. (ECF No. 11-1, PageID #: 2118–19). The Commissioner says that the ALJ

reviewed these records and points out that Claimant's reliance on the treating source opinions is improper as the ALJ did not afford these opinions great weight. (ECF No. 14, PageID #: 2142–43).

The RFC determination sets out an individual's work-related abilities despite his or her limitations. *See* § 416.945(a). Here, the ALJ determined Claimant's RFC as follows:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could sit, stand, or walk about 6 hours in an 8-hour workday. She can push/pull as much as she can lift/carry. She can frequently operate hand controls bilaterally. She can frequently handle, finger, and feel bilaterally. She can occasionally climb ramps and stairs. She can never climb ladders, ropes, or scaffolds. She can only occasionally balance, stoop, kneel, crouch, or crawl. She can never work at unprotected heights. She cannot work around dangerous moving machinery. She can work around no more than frequent dust, odors, fumes, and pulmonary irritants. She can understand, remember, and carry out simple tasks, but not at a strict production rate pace. She can tolerate occasional and superficial interactions with supervisors, coworkers and the public with superficial defined as no arbitration, negotiation, confrontation, mediation, or being responsible for the safety or supervision of others.

(ECF No. 8, PageID #: 1028). When supported by substantial evidence and reasonably drawn from the record, the Commissioner's factual findings are conclusive—even if this Court might reach a different conclusion or if the evidence could have supported a different conclusion. §§ 405(g), 1383(c)(3); *see also Rogers*, 486 F.3d at 241 ("[I]t is not necessary that this court agree with the Commissioner's finding, as long as it is substantially supported in the record."); *Biestek v. Comm'r of Soc. Sec.,* 880 F.3d 778, 783 (6th Cir. 2017) ("It is not our role to try the case *de novo.*" (quotation omitted)). This is so because the Commissioner enjoys a "zone of choice" within which to decide cases without being second-guessed by a court. *Mullen*, 800 F.2d at 545.

The Court agrees with the Commissioner that Claimant cites records the ALJ already

reviewed. The ALJ repeatedly referenced Claimant's lupus, Sjorgrens syndrome, small fiber neuropathy, arthralgias, sensory disturbance, and peripheral polyneuropathy in his decision. (*See* ECF No. 8, PageID #: 1031–35). Further, the ALJ gave great weight to the recommendations of Dr. Knierim who explicitly noted Claimant's lupus, Sjogren's syndrome, and small fiber neuropathy in his opinion. (ECF No. 8, PageID #: 1038 (ALJ's finding), 1129 (expert opinion)). Indeed, the ALJ's adoption of the frequently handling, fingering, and feeling limitation *is* a restriction that accounts for these conditions, and it is supported by Dr. Knierim's opinion which recommended unlimited handling, limited fingering, and unlimited feeling. (ECF No. 8, PageID #: 1129). Dr. Knierim also explicitly noted that Claimant can "frequently finger." (ECF No. 8, PageID #: 1129). While the treating physicians recommended Claimant could "occasionally" or "rarely" push, pull, or perform fine or gross manipulation, the ALJ discredited these opinions for the reasons discussed above, and substantial evidence supports his findings. (ECF No. 8, PageID #: 1035, 1037, 1039). As substantial evidence supports the ALJ's decision to limit Claimant to frequent handling, fingering, and feeling, the Court will not disturb the decision.

## VII.    Conclusion

Based on the foregoing, it the Court AFFIRMS the Commissioner of Social Security's nondisability finding.


Dated: March 23, 2022

                              s/ *Carmen E. Henderson*                          
                              CARMEN E. HENDERSON
                              U.S. MAGISTRATE JUDGE